**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
*dalekgalipo@yahoo.com*
Marcel F. Sincich, Esq (SBN 319508)
*msincich@galipolaw.com*
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
Phone: (818) 347-3333
Fax: (818) 347-4118

**LAW OFFICES OF JOOHAN SONG**
Joohan Song (SBN 232811)
*js@jsonglaw.com*
800 West 6th Street, Suite 1410
Los Angeles, CA 90017
Tel: (213) 297-7275
Fax: (888) 981-5041

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN ACEVES, CRYSTAL ACEVES, and EVELYN ACEVES,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF LOS ANGELES; SCOTT SMITH; and DOES 1-10, inclusive,<br><br>Defendants. | CASE No.: 2:22-cv-00636<br><br>**PLAINTIFFS' COMPLAINT FOR DAMAGES**<br><br>1. 42 U.S.C. § 1983 (Fourth Amendment – Excessive Force)<br>2. 42 U.S.C. § 1983 (Fourth Amendment – Denial of Medical Care)<br>3. 42 U.S.C. § 1983 (Fourteenth Amendment – Denial of Familial Relationship)<br>4. 42 U.S.C. § 1983 (Municipal Liability – Unconstitutional Custom, Practice, or Policy)<br>5. 42 U.S.C. § 1983 (Municipal Liability – Failure to Train)<br>6. 42 U.S.C. § 1983 (Municipal Liability – Ratification)<br>7. Battery (Survival/Wrongful Death)<br>8. Negligence (Wrongful Death)<br>9. Violation of Cal. Civil Code § 52.1<br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT FOR DAMAGES

COME NOW, Plaintiffs JONATHAN ACEVES, CRYSTAL ACEVES, and EVELYN ACEVES for their Complaint against COUNTY OF LOS ANGELES; SCOTT SMITH; and DOES 1-10, inclusive and hereby alleges as follows:

## INTRODUCTION

1.     This civil rights and state tort action seeks compensatory and punitive damages from Defendants for violating various rights under the United States Constitution and state law in connection with the shooting of Decedent, ALFREDO ACEVES, on April 29, 2021.  The Defendants are liable under state law pursuant to Gov't Code §§ 815.2(a) and 820(a), and Cal. Civil Code § 52.1. The Defendants are liable under the Constitution of the United States pursuant to the Fourth and Fourteenth Amendments brought under 42 U.S.C. § 1983.

2.     Defendant Deputy SCOTT SMITH caused Plaintiffs' and ACEVES'S injuries when he used excessive and unreasonable force and killed ACEVES.

3.     Does 1-7, inclusive, ("DOE DEPUTIES") caused various injuries herein by integrally participating or failing to intervene in the incident, and by engaging in other acts and/ or omissions around the time of the incident.

4.     Defendants COUNTY OF LOS ANGELES and DOES 8-10, inclusive, also caused various injuries and are liable under state and federal law and under the principles set forth in *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

5.     This action is in the public interest as PLAINTIFFS seek by means of this civil rights action to hold accountable those responsible for the shooting by DEFENDANTS, and COUNTY OF LOS ANGELES' ratification, failure to train, and policy of inaction in the face of serious constitutional violations.

## THE PARTIES

6.    At all relevant times, Decedent, ALFREDO ACEVES ("ACEVES"), was an individual residing in Los Angeles County, California.

7.    At all relevant times, Plaintiff JONATHAN ACEVES was an individual residing in Los Angeles County, California, and the natural son of ACEVES.  JONATHAN ACEVES brings this action both individually and as successor-in-interest to ACEVES.

8.    At all relevant times, Plaintiff CRYSTAL ACEVES was an individual residing in Los Angeles County, California, and the natural daughter of ACEVES.  CRYSTAL ACEVES brings this action individually and as successor-in-interest to ACEVES.

9.    At all relevant times, Plaintiff EVELYN ACEVES was an individual residing in Los Angeles County, California, and the natural daughter of ACEVES.  EVELYN ACEVES brings this action individually and as successor-in-interest to ACEVES.

10.    Defendant COUNTY OF LOS ANGELES ("COUNTY") is and was a duly organized public entity, form unknown, existing under the laws of the State of California.  COUNTY is a chartered political subdivision of the State of California that is within this judicial district with the capacity to be sued.  COUNTY is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the County of Los Angeles Sheriff's Department ("LASD").  At all relevant times, Defendant COUNTY was responsible for assuring that actions, omissions, policies, procedures, practices, and customs of the LASD and its employees and agents complied with the laws of the United States and the State of California.  At all relevant times, COUNTY was the employer of DOES 1-10, inclusive.

11.    At all relevant times, Defendant SCOTT SMITH ("SMITH") was

2

a duly appointed COUNTY Sheriff's Deputy and/or employee or agent of COUNTY, subject to the oversight and supervision of COUNTY'S elected and non-elected officials.  At all relevant times, SMITH acted under color of law, to wit, under the color of the statutes, ordinances, regulations, policies, customs, and usages of Defendant COUNTY, the LASD, and under the color of the statutes and regulations of the State of California.  At all relevant times, SMITH acted within the course and scope of his employment as a COUNTY Sheriff's Deputy.  On information and belief, SMITH is and was at all relevant times a resident of this judicial district.

12.    Defendants DOES 1-7, inclusive, were and are deputies for the LASD.  At all relevant times, these Defendants were acting under color of law within the course and scope of their duties as LASD deputies and/or employees.  At all relevant times, DOES 1-7, inclusive, were acting with the complete authority and ratification of their principal, COUNTY.

13.    Defendants DOES 8-10, inclusive, are managerial, supervisorial, or policymaking employees of the LASD who were acting under color of law within the course and scope of their duties as supervisorial officers for the LASD.  DOES 8-10, inclusive, were acting with the complete authority of their principal, COUNTY.

14.    PLAINTIFFS are ignorant of the true names and capacities of Defendants DOES 1-10, inclusive, and therefore sues these DEFENDANTS by such fictitious names.  PLAINTIFFS will amend the complaint to allege the true names and capacities of those defendants when the same has been ascertained.  PLAINTIFFS are informed believes, and on that basis alleges, that DOES 1-10, inclusive, and each of them, are responsible in some manner for the occurrences alleged herein and proximately caused PLAINTIFFS' damages.

15.    On information and belief, DOES 1-10, inclusive, were at all

3                    Case No. 2:22-cv-00636

relevant times residents of the County of Los Angeles, California.

16. PLAINTIFFS are informed and believe, and on that basis alleges, that DEFENDANTS acted at all times mentioned herein as the actual and/or ostensible agents, employees, servants or representatives of each other and, in doing the activities alleged herein, acted within the scope of their authority as agents and employees, and with the permission and consent of each other.

17. PLAINTIFFS are informed and believe, and on that basis alleges, that at all times mentioned herein all DEFENDANTS acted under color of law, statute, ordinance, regulations, customs and usages of the State of California and COUNTY.

18. All DEFENDANTS who are natural persons, including DOES 1-10, inclusive, are sued individually and/or in his/her capacity as officers, deputies, investigators, sergeants, captains, commanders, supervisors, and/ or civilian employees, agents, policy makers, and representatives of the COUNTY and the County of Los Angeles Sheriff's Department.

19. ACEVES suffered serious bodily injury and death as a direct and proximate result of the actions and inactions of Defendant DOES 1-10, inclusive. Defendant DOES 1-10, inclusive, are directly liable for ACEVES'S injuries under federal law pursuant to 42 U.S.C. § 1983 and state law.

20. PLAINTIFFS suffered the loss of their natural father as a direct and proximate result of the actions and inactions of Defendant DOES 1-10, inclusive. Defendant DOES 1-10, inclusive, are directly liable for PLAINTIFFS' under federal and state law.

21. On August 9, 2021, PLAINTIFFS timely served their claims for damages with the COUNTY pursuant to applicable sections of the California Government Code.

22.    On September 21, 2021, PLAINTIFFS' claims were rejected by operation of law.

## JURISDICTION AND VENUE

23.    The Court has jurisdiction over PLAINTIFFS' federal law claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because PLAINTIFFS assert claims arising under the laws of the United States including 42 U.S.C. § 1983 and the Fourth Amendment of the United States Constitution.  This Court has supplemental jurisdiction over PLAINTIFFS' state law claims pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

24.    Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b), because all incidents, events, and occurrences giving rise to this action occurred within this district.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

25.    PLAINTIFFS repeat and re-allege each and every allegation of paragraphs 1 through 24, inclusive, as if fully set forth herein.

26.    On April 29, 2021, in the morning hours, DEFENDANT DEPUTIES, including DEFENDANT SMITH and DOE DEFENDANTS 1-7, arrived at or around the 64-year-old ACEVES'S house, in Lake Los Angeles, California.

27.    The DEFENDANT DEPUTIES escalated the situation then used excessive and unreasonable force against ACEVES when the DEFENDANT DEPUTIES used deadly force, killing ACEVES.

28.    Thereafter, the DEFENDANTS failed to timely render and failed to timely summon medical care for ACEVES.

29.     Upon information and belief, the DEFENDANTS failed to give adequate commands to ACEVES and failed to give ACEVES an opportunity to comply with commands prior to their use of excessive and unreasonable force.

30.     Upon information and belief, the DEFENDANTS failed to give ACEVES a verbal warning that deadly force would be used prior to the use of deadly force and failed to give ACEVES an opportunity to heed any warning prior to their use of excessive and unreasonable force.

31.     At the time that the DEFENDANTS used excessive and unreasonable deadly force against ACEVES, ACEVES was not an immediate threat of death or serious bodily injury to any person, including the DEFENDANT DEPUTIES.  Further, there were reasonable alternatives to the use of deadly force.

32.     As a direct result of DEFENDANTS' intentional, negligent, and reckless conduct, ACEVES was shot, suffered greatly, and was wrongfully killed by DEFENDANTS.  ACEVES suffered serious bodily injury, including pain and suffering, loss of life, and loss of enjoyment of life. Additionally, PLAINTIFFS suffered the life-long loss of their father.

33.     Upon information and belief, the use of force against ACEVES was excessive and objectively unreasonable under the circumstances, especially because ACEVES did not pose an immediate threat of death or serious bodily injury to anyone at the time of the shootings, there were less lethal alternatives available, and no warning that deadly force was going to be used was given prior to the use of deadly force.  DEFENDANTS discharged their firearms with a purpose to harm and a specific intent to violate ACEVES'S constitutional rights, evidenced by their deliberate indifference and reckless disregard for ACEVES'S constitutional rights.

# FIRST CLAIM FOR RELIEF

## Fourth Amendment – Excessive Force (42 U.S.C. § 1983)

(PLAINTIFFS against DEFENDANT SMITH, and DOES 1-7, inclusive)

34. PLAINTIFFS repeat and re-allege each and every allegation of paragraphs 1 through 33, inclusive, as if fully set forth herein.

35. PLAINTIFFS bring this claim for relief in their capacity as the successors in interest of ACEVES, for whom there is no estate opened, under California Code of Civil Procedure § 377.30. This claim for relief arose in ACEVES'S favor, and ACEVES would have been the plaintiff with respect to this cause of action had he lived.

36. DEFENDANT DEPUTIES were acting under color of state law and in the course and scope of their employment as law enforcement officers for the COUNTY.

37. The Fourth Amendment of the United States Constitution, as applied to State Actors by the Fourteenth Amendment, provides the right of every person to be free from the use of excessive force by law enforcement officers.

38. DEFENDANT DEPUTIES failed to employ tactics to de-escalate the situation, failed to give ACEVES the time and space to understand the presence of law enforcement, failed to give ACEVES proper commands and the time to comply with those commands, failed to give ACEVES the opportunity to cooperate with law enforcement instructions, and failed to give ACEVES a verbal warning prior to the use of deadly force even though it was feasible to do so.

39. ACEVES was not an immediate threat of death or serious bodily injury to any person at the time the use of excessive and unreasonable force was used against him by the DEFENDANT SMITH. Further, there were reasonable alternatives available to the DEFENDANT DEPUTIES at the

time.

40.    DEFENDANT DEPUTIES used excessive and unreasonable force, including deadly force, against ACEVES when they fired lethal rounds at ACEVES striking him multiple times and killing him.  DEFENDANT DEPUTIES' acts and omissions deprived ACEVES of his right to be secure in his person against unreasonable searches and seizures as guaranteed to ACEVES under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

41.    As a direct result of the aforesaid acts and omissions of DEFENDANTS, ACEVES suffered great physical and mental injury, fear and emotional distress, and loss of enjoyment of life and loss of life.

42.    The conduct of DEFENDANT DEPUTIES alleged above was willful, wanton, malicious, and done with reckless disregard for the rights and safety of ACEVES and warrants the imposition of exemplary and punitive damages in an amount according to proof.

43.    As a result of their misconduct, DEFENDANT DEPUTIES are liable for Plaintiffs, either because they were integral participants in the use of excessive force, or because they failed to intervene to prevent the use of excessive force.

44.    PLAINTIFFS seek survival damages, including but not limited to pre-death pain and suffering, loss of life, and loss of enjoyment of life, under this claim.  PLAINTIFFS also seek attorneys' fees and costs under this claim.

### SECOND CAUSE OF ACTION

**Fourth Amendment – Denial of Medical Care (42 U.S.C. § 1983)**

(PLAINTIFFS against DEFENDANT SMITH, and DOES 1-7, inclusive)

45.    PLAINTIFFS repeat and reallege each and every allegation of

1 | paragraphs 1 through 44, inclusive, as if fully set forth herein.

2 |     46.    PLAINTIFFS bring this claim for relief in their capacity as the

3 | successors in interest of ACEVES, for whom there is no estate opened, under

4 | California Code of Civil Procedure § 377.30.  This claim for relief arose in

5 | ACEVES'S favor, and ACEVES would have been the Plaintiff with respect

6 | to this cause of action had he lived.

7 |     47.    DEFENDANT DEPUTIES were acting under color of state law

8 | and in the course and scope of their employment as law enforcement officers

9 | for the COUNTY.

10 |     48.    The denial of medical care by DEFENDANT DEPUTIES

11 | deprived ACEVES of his right to be secure in his person against

12 | unreasonable searches and seizures guaranteed by the Fourth Amendment to

13 | the U.S. Constitution, as applied to the states by the Fourteenth Amendment,

14 | in violation of 42 U.S.C. § 1983.

15 |     49.    DEFENDANT DEPUTIES failed to provide timely medical care

16 | to ACEVES and failed to timely summon medical care for ACEVES.

17 | DEFENDANT DEPUTIES denial of medical care was a cause of ACEVES'S

18 | pain, suffering and death.

19 |     50.    As a direct result of the aforesaid acts and omissions of

20 | DEFENDANT DEPUTIES suffered great physical and mental injury, fear

21 | and emotional distress leading to his death and the loss of enjoyment of life.

22 |     51.    The conduct of DEFENDANT DEPUTIES alleged above was

23 | willful, wanton, malicious, and done with reckless disregard for the rights

24 | and safety of DECEDENT and warrants the imposition of exemplary

25 | damages in an amount according to proof.

26 |     52.    As a result of their misconduct, DEFENDANT DEPUTIES are

27 | liable for Plaintiffs, either because they were integral participants in the

28 | denial of medical care, or because they failed to intervene to prevent the

1  denial of medical care.

2      53.    PLAINTIFFS seek survival damages under this claim.

3  PLAINTIFFS also seek attorney fees under this claim.

4

5                    **THIRD CLAIM FOR RELIEF**

6  **Fourteenth Amendment – Denial of Familial Relationship (42 U.S.C. § 1983)**

7      (PLAINTIFFS against DEFENDANT SMITH, and DOES 1-7, inclusive)

8      54.    PLAINTIFFS repeat and re-allege each and every allegation of

9  paragraphs 1 through 53, inclusive, as if fully set forth herein.

10     55.    PLAINTIFFS had a cognizable interest under the Due Process

11  Clause of Fourteenth Amendment of the United States Constitution to be free

12  from state actions that deprive him of life, liberty, or property in such a

13  manner as to shock the conscience, including but not limited to unwarranted

14  state interference in their familial relationship with their father, ACEVES,

15  Decedent.

16     56.    The aforementioned actions of DEFENDANT DEPUTIES, along

17  with other undiscovered conduct, shock the conscience, in that they acted

18  with deliberate indifference to the constitutional rights of PLAINTIFFS, and

19  with purpose to harm unrelated to any legitimate law enforcement objective.

20     57.    As a direct and proximate result of these actions, ACEVES

21  experienced pain and suffering and eventually died.  DEFENDANT

22  DEPUTIES thus violated the substantive due process rights of PLAINTIFFS

23  to be free from unwarranted interference with their familial relationship with

24  ACEVES.

25     58.    As a direct and proximate cause of the acts of DEFENDANT

26  DEPUTIES, PLAINTIFFS suffered emotional distress, mental anguish, and

27  pain.  PLAINTIFFS have also been deprived of the life-long love,

28  companionship, comfort, support, society, care, and sustenance of ACEVES,

and will continue to be so deprived for the remainder of their natural lives.

59.     The conduct of DEFENDANT DEPUTIES was willful, wanton, malicious, and done with reckless disregard for the rights and safety of ACEVES and PLAINTIFFS and therefore warrants the imposition of exemplary and punitive damages as to DEFENDANT DEPUTIES.

60.     As a result of their misconduct, DEFENDANT DEPUTIES are liable for PLAINTIFFS, either because they were integral participants in the interference with their familial relationship, or because they failed to intervene to prevent these violations.

61.     PLAINTIFFS bring this claim for the interference with their relationship with their father, ACEVES, and seek wrongful death damages for the violation of their rights.  PLAINTIFFS also seek attorney's fees and costs under this claim.

**FOURTH CLAIM FOR RELIEF**

**Municipal Liability –**

**Unconstitutional Custom, Practice, or Policy (42 U.S.C. § 1983)**

(PLAINTIFFS against DEFENDANT COUNTY and DOES 8-10, inclusive)

62.     PLAINTIFFS repeat and re-allege each and every allegation of paragraphs 1 through 61, inclusive, as if fully set forth herein.

63.     DEFENDANT DEPUTIES were acting under color of state law and in the course and scope of their employment as law enforcement officers for the COUNTY.

64.     The acts of DEFENDANT DEPUTIES deprived ACEVES and PLAINTIFFS of their particular rights under the United States Constitution.

65.     DEFENDANT DEPUTIES acted pursuant to an expressly adopted official policy or longstanding practice or custom of the DEFENDANT COUNTY, and DOES 8-10, inclusive.

66.     On information and belief, DEFENDANT DEPUTIES were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with deprivation of ACEVES'S rights.

67.     DEFENDANT DEPUTIES together with other COUNTY policymakers and supervisors, maintained, inter alia, the following unconstitutional customs, practices, and policies:

(a)     Using excessive and unreasonable force, including deadly force on persons who do not pose a risk of imminent death or serious bodily injury to others.

(b)     Failing to use and exhaust reasonable alternatives to the use of deadly force.

(c)     Failing to give adequate commands and time to comply with those commands.

(d)     Failing to give adequate verbal warning that the use of deadly force will be used and time to heed such a warning.

(e)     Providing inadequate training regarding the use of force, including deadly force, use of force, and use of reasonable alternatives to the use of deadly force.

(f)     The handling of situations involving persons suffering from a mental crisis in accordance with their constitutional rights.

(g)     Providing inadequate training and policies, including sustainment training, enforcement of the training when it does exist, and re-training, regarding the use of force, the use of deadly force, handling situations involving persons suffering from mental crisis, and de-escalation.

(h)     Employing and retaining as law enforcement officers, individuals such as DEFENDANT DEPUTIES at all times material herein, knew or reasonably should have known had dangerous

propensities for abusing their authority and for using excessive force.

(i)     Inadequately supervising, training, controlling, assigning, and disciplining COUNTY DEPUTIES, and other personnel, including DEFENDANT DEPUTIES who COUNTY knew or in the exercise of reasonable care should have known, had the aforementioned propensities or character traits.

(j)     Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining, and controlling misconduct by DEPUTIES of the COUNTY.

(k)     Ratifying unconstitutional conduct and failing to adequately discipline COUNTY DEPUTIES for the above-mentioned categories of misconduct, including inadequate discipline and "slaps on the wrist," discipline that is so slight as to be out of proportion with the magnitude of the misconduct, and other inadequate discipline that is tantamount to encouraging misconduct.

(l)     Announcing that unjustified shootings are "within policy" even when they are later determined in court to be unconstitutional and refusing to discipline, terminate and retrain officers involved in unconstitutional conduct.

(m)     Encouraging, accommodating, or facilitating a "blue code of silence," "blue shield," "blue wall," "blue curtain," "blue veil," or simply "code of silence," pursuant to which officers do not report other law enforcement officers' errors, misconduct, or crimes. Pursuant to this code of silence, if questioned about an incident of misconduct involving another law enforcement officer, while following the code, the officer being questioned will claim ignorance of the other law enforcement officer's wrongdoing.

(n)     Maintaining a policy of inaction and an attitude of

indifference towards law enforcement officer-involved shootings, including by failing to discipline, retrain, investigate, terminate, and recommend law enforcement officers for criminal prosecution who participate in shootings.

(o)    Upon information and belief, COUNTY has an unofficial policy, practice and/or custom of finding almost all—if not all—of its officer involved shootings to be within policy, of not disciplining its officers involved in shootings, or not retraining or firing law enforcement officers involved in shootings, and of not recommending criminal charges against their officers involved in excessive and unreasonable officer-involved shootings.  As a result, officers involved in excessive uses of deadly force are allowed back to patrol the streets even though COUNTY knew, or should have known, that these law enforcement officers have a propensity for using excessive deadly force against the citizens that the law enforcement officers are supposed to protect and serve, especially against minorities and those in a mentally crisis.

(p)    Upon information and belief, as a result of COUNTY policy, custom and/or practices, officers know that if they use deadly excessive force against someone, they will not be disciplined and their use of force will be found within policy, which results in a significant number of COUNTY DEPUTIES being involved in numerous shootings.  This policy, custom and/or practice was established by supervising and managerial employees of COUNTY, specifically, those employees tasked with determining whether law enforcement officer-involved shootings fall within policy, those employees responsible for disciplining, retraining, and firing employees who use excessive force, and for those employees responsible for making

recommendations of criminal charges being filed against law enforcement officers who use excessive deadly force.

(q)     Upon information and belief, this policy, custom and/or practice long lasting and persistent, and existed well before ACEVES was killed by the DEFENDANT DEPUTIES.  This policy, custom and/or practice was established so that COUNTY DEPUTIES do not bear the responsibility for the people that they use excessive deadly force against.  This policy, custom and/or practice exists so that the public does not have such a negative perception of COUNTY and its law enforcement departments and so that COUNTY can avoid the repercussions associated with its agents' use of excessive deadly force against citizens, including negative publicity, avoiding criminal prosecution, and avoiding civil liability.  A significant reason that this policy, custom and/or practice was established was to avoid COUNTY being liable, under a theory of vicarious liability, for the uses of excessive and unreasonable deadly force by its employees.  In other words, there is a large financial incentive for COUNTY to erroneously determine that most, if not all, of its officers' uses of deadly force are within policy.  If COUNTY, through its policymakers and supervisors, would admit that their officers were at fault for using excessive and unreasonable deadly force, then COUNTY is well aware of how much they would have to pay for any associated litigation.

68.     By reason of the aforementioned acts and omissions, PLAINTIFFS have suffered loss of love, companionship, affection, comfort, care, society, training, guidance, and past and future support of ACEVES, and ACEVES endured substantial pain and suffering, loss of enjoyment of life, and death.

69.     DEFENDANTS COUNTY, and DOES 8-10, inclusive, together

15

with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged herein.  Despite having knowledge as stated above, these DEFENDANTS condoned, tolerated and through actions and inactions thereby ratified such policies.  Said DEFENDANTS also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of ACEVES and other individuals similarly situated.

70.     By perpetrating, sanctioning, tolerating and ratifying the outrageous conduct and other wrongful acts, DEFENDANTS COUNTY, and DOES 8-10, inclusive, acted with intentional, reckless, and callous disregard for the ACEVES'S Constitutional rights.  Furthermore, the policies, practices, and customs implemented, maintained, and tolerated by DEFENDANTS COUNTY and DOES 8-10, inclusive, were affirmatively linked to and were a significantly influential force behind ACEVES'S injuries.

71.     The following are a few examples of DEFENDANT COUNTY'S unconstitutional customs, practices and policies, and continued misconduct:

(a)     The October 6, 2020 shooting of Nicholas Burgos, a 39-year-old man shot nine (9) times in the UCLA Harbor Hospital Mental Care Center.

(b)     The August 31, 2020 shooting death of Dijon Kizzee.

(c)     The June 26, 2019 shooting of Timothy Neal in his home; Case No. 2:20-cv-06315-CBM-JC.

(d)     The July 3, 2019 shooting death of the unarmed Rickie Starks; Case No. 19STCV38462, Case No.: 2:21-cv-05209 ODW (GJSx).

(e)     The August 16, 2017 shooting death of Kenneth Lewis, Jr.;

Case No.: 2:18-cv-04910-CBM-SK.

(f)     In *Berry, et al. v. County of Los Angeles, et al.*, Case No.: 15-cv-09715-BRO (KSx); in events captured on video, numerous Los Angeles County deputies was beat, pepper sprayed, tased, and fired over 30 bullets without warning at John Berry while seated in his car and killing him.  Upon information and belief, the County found that the deputies use of force was within policy, and none of the deputies were disciplined, reprimanded, retrained, suspended, or otherwise penalized for their actions.

(g)     In *V.W., et al. v. County of Los Angeles, et al.*, Case No.: 2:18-cv-03684-FMO-ARG; on February 4, 2018 Deputy Gregory Van Hoesen shot and killed the 16-year-old Anthony Weber, shooting him in the back while unarmed.

(h)     In *K.C.R., et al. v. County of Los Angeles, et al.*, Case No.: 2:13-cv-03806-PSG-SS, on June 21, 2012, the unarmed Kenneth Rivera III was shot and killed by Deputy Norma Silva.

(i)     In *C.M., et al. v. County of Los Angeles, et al.*, Case No.: 2:17-cv-05135-VAP-AGR, on August 2, 2016, Deputy Jeffrey Brito shot and killed the unarmed William Bowers.  On information and belief, Deputy Brito was not disciplined, reprimanded, retrained, suspended, or otherwise penalized for his actions.

(j)     In *Mitchell v. County of Los Angeles, et al.*, Case No.: CV-8421-RJK (AWx), Defendant COUNTY argued that the use of deadly force against an unarmed civilian (Robert Mitchell) was reasonable; the jury found otherwise, returning a $4,000,000 verdict after finding that Deputy Rick Manes used excessive and unreasonable force when he shot the unarmed Mr. Mitchell in the back six times, killing him. Deputy Manes was not disciplined or retrained for his use of deadly

COMPLAINT FOR DAMAGES

force.

      (k)    In *Gutierrez, et al. v. County of Los Angeles, et al.*, Case No.: CV-10-7608 PSG (AJWx), a jury found that Deputy David Salazar used excessive and unreasonable force when he shot and killed Efrain Gutierrez, and awarded Mr. Gutierrez' family $2,000,000. Deputy Salazar was not disciplined or retrained for his use of deadly force.

      (l)    In *Beets v. County of Los Angeles, et al.*, Case No.: KC-057667, a jury determined that the use of deadly force by the defendant County deputy, was excessive and unreasonable under the circumstances, and returned a $1,035,000 verdict in favor of the plaintiff.

      (m)    In *Jacobo, et al. v. County of Los Angeles, et al.*, Case No.: CV-11-7212 GW (SSx), on August 8, 2009, County Deputy Mat Taylor shot and killed Ezequiel Jacobo, who was unarmed.  Police reports confirmed that Mr. Jacobo was unarmed.  Deputy Taylor was not disciplined or retrained for shooting Mr. Jacobo.

      (n)    In *Lobrono, et al. v. County of Los Angeles, et al.*, Case No.: CV-13-03838, on February 1, 2013, County Deputy Ray Huang shot Michael Lobrono, who was unarmed.  Police reports confirmed that Mr. Lobrono was unarmed.  Deputy Huang was not disciplined or retrained for his use of deadly force.

      (o)    In *Sanchez v. County of Los Angeles, et al.*, Case No.: CV 13-0383; on April 20, 2013, County Deputy Christopher Gomez shot Chalino Sanchez, who was unarmed and riding his bicycle at the time of the shooting.  Police reports confirmed that Mr. Sanchez was unarmed.  Deputy Gomez was not disciplined or retrained for his use of deadly force.

COMPLAINT FOR DAMAGES

(p)     In *N.K.A., et al. v. County of Los Angeles, et al.*, Case No.: CV 13-05507; on May 11, 2013, County Deputy Luis Mendoza shot and killed Rigoberto Arceo, who was unarmed and had his hands up at the time of the shooting.  Police reports confirmed that Mr. Arceo was unarmed.  Deputy Mendoza was not disciplined or retrained for his use of deadly force.

(q)     In *D.A.B., et al. v. County of Los Angeles, et al.*, Case No.: CV-14-05207 FMO (ASx); on May 23, 2013, County Deputies Dru Strong and Gregory Rodriguez shot and killed Rashawn Brown, who, according to percipient witnesses, was unarmed at the time he was shot.  Deputies Strong and Rodriguez were not disciplined or retrained for their use of deadly force.

(r)     In *Gonzalo Martinez v. County of Los Angeles, et al.*, Case No.: 2:14-cv-05456-DSF-MAN, County Deputy Cuauhtemoc Gonzalez discharged his weapon at a moving vehicle, striking Gonzalo Martinez, who was an unarmed backseat passenger.  Deputy Gonzalez was not disciplined or retrained for his use of deadly force.

(s)     In *Belia C.M., et al. v. County of Los Angeles, et al.*, Case No.: 2:15-cv-09585-SJO-FFM, Deputy Espinosa shot and killed Tony C.M., who was unarmed at the time of the shooting.  On information and belief, Deputy Espinosa as not disciplined or retrained for his use of deadly force.

(t)     In *Marian Amaya, et al., v. County of Los Angeles, et al.*, Case No.: VC062384, on information and belief, County deputies shot and killed Emiliano Amaya, with shots to Mr. Amaya's back.  On information and belief, the deputies were not disciplined or retrained for their use of deadly force.

(u)     The August 4, 2013 shooting of the unarmed Gonzalo

1    Martinez; Case No.: 2:14-cv-05456-DSF-MAN.

2    72.    The acts of each of DEFENDANTS DOES 8-10, inclusive, were

3    willful, wanton, oppressive, malicious, fraudulent, and extremely offensive

4    and unconscionable to any person of normal sensibilities, and therefore

5    warrants imposition of exemplary and punitive damages as to DOES 8-10,

6    inclusive.

7    73.    By reason of the aforementioned acts and omissions of

8    DEFENDANTS COUNTY and DOES 8-10, inclusive, ACEVES suffered

9    pain and suffering, loss of enjoyment of life, and loss of life; and

10    PLAINTIFFS suffered the loss of their father.

11    74.    Accordingly, DEFENDANTS COUNTY and DOES 8-10,

12    inclusive, each are liable for compensatory damages under 42 U.S.C. § 1983.

13    75.    PLAINTIFFS bring this claim and seek survival damages,

14    including but not limited to pre-death pain and suffering, loss of life, and

15    loss of enjoyment of life.  Plaintiff also seek attorneys' fees and costs under

16    this claim.

17

18    **FIFTH CLAIM FOR RELIEF**

19    **Municipal Liability for Failure to Train (42 U.S.C. §1983)**

20    (PLAINTIFFS against DEFENDANT COUNTY and DOES 8-10, inclusive)

21    76.    PLAINTIFFS repeat and re-allege each and every allegation in

22    paragraphs 1 through 75 of this Complaint with the same force and effect as

23    if fully set forth herein.

24    77.    DEFENDANT DEPUTIES were acting under color of state law

25    and in the course and scope of their employment as law enforcement officers

26    for the COUNTY.

27    78.    The acts of DEFENDANT DEPUTIES deprived ACEVES and

28    PLAINTIFFS of their particular rights under the United States Constitution.

79.     On information and belief, COUNTY failed to properly and adequately train DEFENDANT DEPUTIES including but not limited to, with regard to the use of physical force, less than lethal force, and lethal force; the use of reasonable alternatives to the use of deadly force; proper communication, proper warning; utilizing time, space, distance, cover and concealment; pre-shooting tactics, techniques, and procedures; de-escalation; dealing with situations in which a person is experiencing a mental crisis; not waiting for sufficient assets, equipment and personnel, including mental health crisis teams to arrive before engaging in situations; controlling DEPUTIES emotions and fears including inadequate "warrior training" that imbues DEPUTIES with irrational fears about every situation and encourages excessive and unreasonable force and overreacting to a situation; inappropriate "shot/don't shoot" scenarios in training that promote the use of unreasonable force; continually assessing a situation to justify every shot fired; and providing medical care to person they have injured.

80.     The training policies of DEFENDANT COUNTY were not adequate to train its DEPUTIES to handle the usual and recurring situations with which they must deal, including de-escalation techniques, the use of less than lethal and lethal force, and pre-shooting tactics.

81.     DEFENDANT COUNTY has numerous officer-involved shootings annually.  COUNTY was aware that there was a reoccurring problem with their officers shooting individuals, instead of employing proper de-escalation techniques.  In other words, COUNTY was aware that there was a problem involving numerous officer-involved shootings which could have been reasonably avoided had the DEPUTIES employed well-known and accepted law enforcement tactics and techniques to avoid using unnecessarily and excessive deadly force against these individuals by COUNTY employees.

82.     The training that COUNTY law enforcement officers, including DEFENDANT DEPUTIES, received with regards to using deadly force was inadequate because it has continuously resulted in numerous unreasonable uses of deadly force by COUNTY DEPUTIES against individuals (going back at least five (5) years).  Further, the training that COUNTY DEPUTIES, including DEFENDANT DEPUTIES, received with regards to using deadly force was inadequate because it failed to implement or enforce well known and accepted police tactics and techniques for dealing with individuals without having to use deadly force against them.

83.     DEFENDANT COUNTY'S failure to train includes not having training for DEPUTIES to handle the usual and recurring situations with which they must deal; not providing adequate time and resources for DEPUTIES to train, when the training does exist, so that the DEPUTIES can rely on that training during use of force incidents; not enforcing the basic training standards, when they do exist, that are designed to prevent DEPUTIES from using excessive and unreasonable force; not adequately providing recurring training so that DEPUTIES do not lose necessary perishable skills, and not re-training DEPUTIES who have used force in the field.

84.     DEFENDANT COUNTY has no training or has inadequate training with regard to the following:

(a)     Effective communication to enable a peace officer to gain cooperation and voluntary compliance in stressful situations including when confronting a hostile subject.

(b)     A law enforcement officer's responsibility to effectively communicate both in a professional demeanor and with words resulting in improved safety.

(c)     Effective communication as a basic element of the use of

force with the goal of law enforcement is to gain voluntary compliance without resorting to physical force.

(d)    The use of deadly force as the most serious decision a peace officer may ever have to make.  Such a decision should be guided by the reverence for human life and, used only when other means of control are unreasonable or have been exhausted.

(e)    Reverence for life as the foundation on which the use of deadly force rests.  Deadly force as always the last resort used in the direst of circumstances.  The authority to use deadly force as an awesome responsibility given to peace officers by the people who expect them to exercise that authority judiciously.  In the law enforcement/community partnership, the expectation that peace officers are self-disciplined and accountable.

(f)    Self-control as one of a peace officer's greatest assets in dealing with a person or a situation.

(g)    Unreasonable fear includes overreactions to true potential threats as well as reactions to unreal threats based on prejudice or poor application of past experience.

(h)    Unreasonable fear can be responsible for inappropriate responses such as a failure to respond or responding inappropriately (using unreasonable force).

(i)    Unreasonable force occurs when the type, degree, and duration of force employed was not necessary nor appropriate.

(j)    The community expects that its peace officers will use only reasonable amounts of force.  Likewise, it expects that someone, including peace officers, will intervene if reasonable force is exceeded.

(k)    Learning the behavior signs and indicators of various special conditions that assist DEPUTIES in identifying the proper

intervention to bring the situation to a quick and safe conclusion.  Take control of a situation by using proper communication techniques for persons with disabilities.

(l)     Recognition of cues and other indicators in order to make appropriate decisions regarding intervention strategies.  To the extent possible, responding DEPUTIES should observe the behavior exhibited by the person in an effort to determine what is happening and what might be prompting the observed behavior.

(m)    Other techniques to the use of deadly force include but are not limited to de-escalation, communication, conflict resolution, defensive tactics, handcuffing and restraints, control devices and techniques, batons, tear gas, OC spray, pepper projectile, kinetic energy projectile, and use of a canine.

(n)     DEPUTIES subjective fear of future harm alone is insufficient as an imminent threat.  An imminent threat is one that requires instant attention.

(o)     Responding DEPUTIES should de-escalate the situation by introducing themselves and attempt to obtain the person's name, be patient, polite, clam, courteous and avoid overreacting, speak and move slowly and in a non-threatening manner, moderate the level of direct eye contact, remove distractions, demonstrate active listening skills, and provide sufficient avenues of retreat or escape should the situation become violent.

85.    DEFENDANT COUNTY and DOES 8-10, inclusive, were deliberately indifferent to the obvious consequences of its failure to train its DEPUTIES adequately.

86.    The failure of DEFENDANT COUNTY and DOES 8-10, inclusive, to provide adequate training caused the deprivation of ACEVES'S

rights by DEFENDANT DEPUTIES that is, DEFENDANT'S failure to train is so closely related to the deprivation of ACEVES'S rights as to be the moving force that caused the ultimate injury.

87.     By reason of the aforementioned acts and omissions, ACEVES suffered past and future pain and suffering, loss of enjoyment of life, and loss of life; and PLAINTIFFS suffered the loss of their father.

88.     Accordingly, DEFENDANT COUNTY and DOES 8-10, inclusive, are liable to PLAINTIFFS for compensatory damages under 42 U.S.C. § 1983.

89.     PLAINTIFFS bring this claim and seek survival damages, including but not limited to pre-death pain and suffering, loss of life, and loss of enjoyment of life.  Plaintiff also seek attorneys' fees and costs under this claim.

## SIXTH CLAIM FOR RELIEF

### Municipal Liability – Ratification (42 U.S.C. § 1983)

(PLAINTIFFS against DEFENDANT COUNTY and DOES 8-10, inclusive)

90.     PLAINTIFFS repeat and re-allege each and every allegation in paragraphs 1 through 89 of this Complaint with the same force and effect as if fully set forth herein.

91.     DEFENDANT DEPUTIES were acting under color of state law and in the course and scope of their employment as law enforcement officers for the COUNTY.

92.     The acts of DEFENDANT DEPUTIES deprived ACEVES and PLAINTIFFS of their particular rights under the United States Constitution.

93.     Upon information and belief, a final policymaker, acting under color of law, has a history of ratifying unreasonable uses of force, including deadly force.

94.     Upon information and belief, a final policymaker, acting under color of law, who had final policymaking authority concerning the acts of DEFENDANT DEPUTIES ratified the DEFENDANT DEPUTIES' acts and the bases for them.  Upon information and belief, the final policymaker knew of and specifically approved of DEFENDANT DEPUTIES' acts.

95.     On information and belief, COUNTY final policymakers, including DOES 8-10, inclusive, knew that ACEVES was not an immediate threat of death or serious bodily injury to any person at the time of the DEFENDANT DEPUTIES' use of deadly force.

96.     On information and belief, the official policies with respect to the incident are that DEPUTIES are not to use deadly force against an individual unless the individual poses an immediate risk of death or serious bodily injury to the DEPUTIES or others, or if the individual has inflicted death or serious bodily injury against someone or threatened to do so, the DEPUTIES may use deadly force to prevent the individual's escape.  The DEPUTIES actions deviated from these official policies because ACEVES did not pose an immediate threat of death or serious bodily injury to the involved DEPUTIES or anyone.

97.     On information and belief, the COUNTY approved of the deputies' actions after a hearing presented by the deputies' legal counsel to DOES 8-10, inclusive, after which DOES 8-10, inclusive, found the DEPUTIES actions to be within the official policies of the COUNTY.  On information and belief, the basis for such approval was based on the deputies' self-serving statements that they feared they would be killed or seriously injured, despite evidence to the contrary, including evidence that the involved DEPUTIES were never physically injured.

98.     Upon information and belief, a final policymaker has determined (or will determine) that the acts of DEFENDANT DEPUTIES were "within

1   policy."

2       99.    By reason of the aforementioned acts and omissions, ACEVES

3   suffered past and future pain and suffering, loss of enjoyment of life, and

4   loss of life; and PLAINTIFFS suffered the loss of their father.

5       100.  Accordingly, DEFENDANT COUNTY and DOES 8-10,

6   inclusive, are liable to PLAINTIFFS' for compensatory damages under 42

7   U.S.C. § 1983.

8       101.  PLAINTIFFS bring this claim and seek survival damages,

9   including but not limited to pre-death pain and suffering, loss of life, and

10   loss of enjoyment of life.  Plaintiff also seek attorneys' fees and costs under

11   this claim.

12

13   **SEVENTH CLAIM FOR RELIEF**

14   **Battery (Cal. Govt. Code § 820 and California Common Law)**

15   (PLAINTIFFS against ALL DEFENDANTS; DEFENDANT DEPUTIES directly,

16   and DEFENDANT COUNTY vicariously)

17       102.  PLAINTIFFS repeat and re-allege each and every allegation of

18   paragraphs 1 through 101, inclusive, as if fully set forth herein.

19       103.  DEFENDANT DEPUTIES, including SMITH, while working as

20   officers, deputies, sergeants, and in other capacities, for the Los Angeles

21   County Sheriff Department, and acting within the course and scope of their

22   duties, intentionally shot ACEVES.  As a result of the actions of

23   DEFENDANT DEPUTIES, ACEVES was seriously injured and died.

24   DEFENDANT DEPUTIES had no legal justification for using force,

25   including deadly force, against ACEVES, and DEFENDANT DEPUTIES use

26   of force while carrying out their duties as DEPUTIES was an unreasonable

27   under the circumstances.

28       104.  At all relevant times, ACEVES was not an immediate threat of

1  death or serious bodily injury to anyone, including DEFENDANT

2  DEPUTIES, no warning was given that deadly force was going to be used

3  prior to the use of deadly force, and less than lethal alternatives were

4  available to DEFENDANT DEPUTIES.

5       105.  DEFENDANT COUNTY is vicariously liable for the wrongful

6  acts of DEFENDANT DEPUTIES pursuant to section 815.2 of the California

7  Government Code, which provides that a public entity is liable for injuries

8  caused by its employees within the scope of the employment is the

9  employees' acts would subject them to liability.

10       106.  The conduct of DEFENDANT DEPUTIES was malicious,

11  wanton, oppressive, and accomplished with a conscious disregard for the

12  rights of ACEVES, entitling PLAINTIFFS to an award of exemplary and

13  punitive damages.

14       107.  PLAINTIFFS seek survival, wrongful death and punitive

15  damages under this claim.

16

17                 **EIGHTH CLAIM FOR RELIEF**

18       **Negligence (Cal. Govt. Code § 820 and California Common Law)**

19  (PLAINTIFFS against ALL DEFENDANTS; DEFENDANT DEPUTIES directly,

20               and DEFENDANT COUNTY vicariously)

21       108.  PLAINTIFFS repeat and re-allege each and every allegation of

22  paragraphs 1 through 107, inclusive, as if fully set forth herein.

23       109.  Peace officers, including DEFENDANT DEPUTIES, have a duty

24  to use reasonable care to prevent harm and injury to others.  This duty

25  includes using appropriate tactics, giving appropriate commands, giving

26  appropriate warnings, use of de-escalation techniques, and not using any

27  force unless necessary, using the least amount of force necessary, and only

28  using deadly force as a last resort, and providing timely medical care for a

person the DEFENDANT DEPUTIES intentionally harmed.  These duties also include the DEFENDANT DEPUTIES responsibility to follow their training and policies, responsibility to ensure they are properly trained and equipped to perform their duties in accordance with the department policies, and properly investigate and report on their use of force incidents.

110.   The DEFENDANT DEPUTIES breached their duty of care. Upon information and belief, the actions and inactions of DEFENDANT DEPUTIES were negligent and reckless, including but not limited to:

(a)   the failure to properly and adequately assess the need to use force against ACEVES.

(b)   the negligent tactics and handling of the situation with ACEVES, including pre-shooting negligence and failure to utilize de-escalation techniques.

(c)   the negligent scope and manner of the use of force against ACEVES.

(d)   the failure to intervene on other DEPUTIES use of excessive and unreasonable force, and/or negligent tactics.

111.   As a direct and proximate result of DEFENDANT DEPUTIES' conduct as alleged above, and other undiscovered negligent conduct, ACEVES was caused to suffer severe past and future mental and physical pain and suffering, loss of enjoyment of life, and loss of life.

112.   At all relevant times, ACEVES was not an immediate threat of death or serious bodily injury to anyone, no warning was given that deadly force was going to be used prior to the use of deadly force, and less than lethal alternatives were available to DEFENDANT DEPUTIES.

113.   The DEFENDANT DEPUTIES negligently caused physical injury to ACEVES when the DEFENDANT DEPUTIES discharged their firearms at ACEVES, striking him.  The use of force, including deadly force,

by the DEFENDANT DEPUTIES was excessive, unreasonable, and the
DEFENDANT DEPUTIES were negligent when they discharged their
firearms at ACEVES, including pre-shooting negligent conduct, actions,
inactions, and tactics, and their post-shooting negligent conduct, actions, and
inactions.

114.   DEFENDANT COUNTY is vicariously liable for the wrongful
acts of the DEFENDANT DEPUTIES, pursuant to section 815.2(a) of the
California Government Code, which provides that a public entity is liable for
the injuries caused by its employees within the course and scope of the
employment if the employee's act would subject him or her to liability.

115.   PLAINTIFFS seek wrongful death and punitive damages under
this claim.

## NINTH CLAIM FOR RELIEF

**Violation of Cal. Civ. Code § 52.1 and California Common Law)**

(PLAINTIFFS against ALL DEFENDANTS; DEFENDANT DEPUTIES
directly, and DEFENDANT COUNTY vicariously)

116.   PLAINTIFFS repeat and re-allege each and every allegation in
paragraphs 1 through 115 of this Complaint with the same force and effect as
if fully set forth herein.

117.   The Bane Act, the California Constitution and California
common law prohibit the use of excessive force by law enforcement.
California Civil Code, Section 52.1(b) authorizes a private right of action
and permits survival actions for such claims.  "[A] successful claim for
excessive force under the Fourth Amendment provides the basis for a
successful claim under § 52.1." *Chaudhry v. City of Los Angeles*, 751 F.3d
1096, 1105-06 (9th Cir. 2014); citing *Cameron v. Craig*, 713 F.3d 1012,
1022 (9th Cir. 2013) ("[T]he elements of the excessive force claim under §

1  52.1 are the same as under § 1983."); *Bender v. Cnty. of L.A.*, 217

2  Cal.App.4th 968, 976 (2013) ("an unlawful [seizure]—when accompanied by

3  unnecessary, deliberate and excessive force—is [] within the protection of

4  the Bane Act").

5      118.  DEFENDANT DEPUTIES violated PLAINTIFFS and

6  ACEVES'S Fourth Amendment rights to be free from unreasonable search

7  and seizures when they used excessive and unreasonable force against

8  ACEVES and denied ACEVES medical care.  DEFENDANTS specifically

9  intended to violate PLAINTIFFS and ACEVES'S constitutional rights as

10  stated above, as demonstrated by DEFENDANTS' reckless disregard for

11  PLAINTIFFS and ACEVES'S constitutional rights.  Thus, PLAINTIFFS can

12  recover for violation of the Bane Act.  *See Reese v. County of Sacramento*,

13  888 F.3d 1030, 1040-45 (2018).

14      119.  On April 29, 2021, DEFENDANTS seized ACEVES when

15  DEFENDANTS fired multiple gunshots at ACEVES, striking him in multiple

16  places and DEFENDANTS failed to timely provide ACEVES medical care.

17  Within minutes of their arrival at ACEVES' house, DEFENDANTS shot

18  ACEVES, and DEFENDANTS made no efforts to de-escalate the situation

19  upon his arrival or formulate a tactical plan.  Then DEFENDANTS failed to

20  timely provide or failed to allow medical assistance for ACEVES.

21      120.  At all times prior to the deployment of multiple gunshots fired at

22  ACEVES, DEFENDANTS had access to cover; DEFENDANTS were not at

23  risk of immediate death or serious bodily injury based on ACEVES'S

24  actions; DEFENDANTS had time to issue proper commands to ACEVES;

25  DEFENDANTS had time to allow ACEVES to comply with commands if

26  they were given; DEFENDANTS were armed with less-lethal force options;

27  it was feasible for DEFENDANTS to utilize those less-lethal force options;

28  there were several other reasonable alternatives to the use of deadly force

available to the DEFENDANTS; and DEFENDANTS failed to exhaust all reasonable less-lethal force options.

121.   DEFENDANTS violated ACEVES'S Constitutional right to be free from excessive and unreasonable force by police officers. DEFENDANTS intended to violate ACEVES'S rights and/or acted with reckless disregard with regard to ACEVES'S Constitutional rights, which is evidence that they intended to violate ACEVES'S rights.

122.   ACEVES was caused to suffer severe pain and suffering, loss of enjoyment of life and loss of life.  The conduct of DEFENDANTS was a substantial factor in causing the harm, losses, injuries, and damages of ACEVES.

123.   DEFENDANT COUNTY is vicariously liable for the wrongful acts of DEFENDANT DEPUTIES pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's acts would subject him or her to liability.

124.   The conduct of the individual DEFENDANTS was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of PLAINTIFFS and ACEVES in that PLAINTIFFS' and ACEVES'S constitutional rights were intentionally deprived and violated, and/or there was reckless disregard for constitutional rights of PLAINTIFFS and ACEVES.  As such, the aforementioned conduct entitles PLAINTIFFS and ACEVES to an award of exemplary and punitive damages.

125.   PLAINTIFFS also seek costs and attorneys' fees.

/ / /

/ / /

/ / /

1

## **PRAYER FOR RELIEF**

2         WHEREFORE, Plaintiffs JONATHAN ACEVES, CRYSTAL ACEVES,

3   and EVELYN ACEVES request entry of judgment in their favor against

4   COUNTY OF LOS ANGELES; SCOTT SMITH; and DOES 1-10, inclusive, as

5   follows:

6         1.      For compensatory damages according to proof at trial, under federal

7                 and state law;

8         2.      For punitive and exemplary damages against the individual

9                 defendants in an amount to be proven at trial;

10        3.      For statutory damages;

11        4.      For reasonable attorneys' fees including litigation expenses;

12        5.      For costs of suit and interest incurred herein; and

13        6.      For such other and further relief as the Court may deem just and

14                proper.

15

16   DATED: January 28, 2022              **LAW OFFICES OF DALE K. GALIPO**
                                          **LAW OFFICES OF JOOHAN SONG**
17

18                               By:      */s/ Marcel F. Sincich*
19                                        Dale K. Galipo
20                                        Marcel F. Sincich
                                          Joohan Song
21                                        *Attorneys for Plaintiffs*

22

23

24

25

26

27

28

## <u>DEMAND FOR JURY TRIAL</u>

PLAINTIFFS hereby submit this demand that this action be tried in front of a jury.

DATED: January 28, 2022       **LAW OFFICES OF DALE K. GALIPO**
                                   **LAW OFFICES OF JOOHAN SONG**

By:       */s/ Marcel F. Sincich*
              Dale K. Galipo
              Marcel F. Sincich
              Joohan Song
              *Attorneys for Plaintiffs*

COMPLAINT FOR DAMAGES